1
2
3
4
5
6

HONORABLE RICHARD A. JONES

7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| 10  ZIXIANG LI, et al.,<br><br>11            Plaintiffs,<br><br>12<br><br>13    v.<br><br>14  UNITED STATES, et al.,<br><br>15            Defendants. | CASE NO. C10-798 RAJ<br><br>ORDER |

16

## I.   INTRODUCTION

17
18      This matter comes before the court on Defendants' motion to dismiss (Dkt. # 23).

19 The court has considered the parties' briefing and supporting evidence, and has heard

20 from the parties at oral argument.  For the reasons explained below, the court GRANTS

the motion (Dkt. # 23).

21

## II.   BACKGROUND

22
23      Plaintiffs are individuals from China who are seeking to acquire permanent

24 resident status in the United States.  Compl. ¶ 1.[1]  Plaintiffs filed this putative class action

25 to allege that the Defendants — who include the United States, United States Department

26

27 _____

[1] Hereinafter, this order refers to paragraphs in the Complaint (Dkt. # 1) using bare "¶" marks.

ORDER- 1

1   of State ("State Department"), the United States Department of Homeland Security

2   ("DHS"), United States Citizenship and Immigration Services ("USCIS"), and the

3   respective agency heads — violated the provisions of the Immigration and Nationality

4   Act ("INA") relating to the allocation of employment-based third-preference ("EB-3")

5   immigrant visa numbers. *Id.*  Specifically, Plaintiffs allege that in fiscal years 2008 and

6   2009, Defendants violated INA § 203(e) by not adhering to the priority-date order set out

7   by the statute.  The named Plaintiffs claim that their applications for adjustment of status

8   have been unlawfully delayed as a result of Defendants' conduct.  *See* ¶¶ 8-12.

9        The Defendants filed a motion to dismiss Plaintiffs' lawsuit, on the basis that

10  Plaintiffs lack standing and, in the alternative, the Plaintiffs have failed to state a claim.

## III.     ANALYSIS

12  **A.     Legal Standards.**

13       When considering a motion to dismiss for failure to state a claim under Federal

14  Rule of Civil Procedure 12(b)(6), "the court is to take all well-pleaded factual allegations

15  as true and to draw all reasonable inferences therefrom in favor of the plaintiff." *Wyler*

16  *Summit P'ship v. Turner Broadcasting Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).

17  Facts alleged in the complaint are assumed to be true.  *See Lipton v. Pathogenesis Corp.*,

18  284 F.3d 1027, 1030 n.1 (9th Cir. 2002).  The issue to be resolved on a motion to dismiss

19  is whether the plaintiff is entitled to continue the lawsuit to establish the facts alleged, not

20  whether the plaintiff is likely to succeed on the merits.  *See Marksman Partners L.P. v.*

21  *Chantal Pharm. Corp.*, 927 F. Supp. 1297, 1304 (C.D. Cal. 1996).

22       A complaint must provide more than a formulaic recitation of the elements of a

23  cause of action, and must assert facts that "raise a right to relief above the speculative

24  level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  The Ninth Circuit

25  has summarized *Twombly*'s plausibility standard to require that a complaint's "non-

26  conclusory 'factual content,' and reasonable inferences from that content, must be

27  plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret*

1 | *Service*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

2 | 1949 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by

3 | mere conclusory statements, do not suffice."  *Iqbal*, 129 S. Ct. at 1949.

4 | **B.      Plaintiffs Lack Standing to Bring this Lawsuit Against the State Department.**

5 | Plaintiffs' claims are brought under the Administrative Procedures Act ("APA"),

6 | which authorizes lawsuits by a "person suffering legal wrong because of agency action,

7 | or adversely affected or aggrieved by agency action within the meaning of a relevant

8 | statute."  5 U.S.C. § 702.  The APA also authorizes suits based on an agency's failure to

9 | act, if "agency action [is] unlawfully withheld or unreasonably delayed."  5 U.S.C. §

10 | 706(1).  A court may compel an agency only to take a discrete action required by law;

11 | the APA does not provide relief for a plaintiff seeking to improve an agency program or

12 | to direct an agency to exercise its discretion in a particular way.  *See Norton v. Southern*

13 | *Utah Wilderness Alliance*, 542 U.S. 55, 64-65 (2004).

14 | Before considering the Plaintiffs' specific allegations, a background in EB-3

15 | immigrant visas must be considered.  An immigrant's eligibility to apply for an

16 | immigrant visa is determined by the preference category (EB-3, in this case) and priority

17 | date.  The EB-3 visa application procedure begins when an employer files an immigrant

18 | visa petition or an application for labor certification with the United States Department of

19 | Labor ("DOL"), requesting a certification that there are no qualified workers in the

20 | United States available for a job opening.  *See* 8 U.S.C. § 1182.  The date that this

21 | application or petition is submitted to the DOL is considered the "priority date."  *See* 8

22 | C.F.R. § 204(d).

23 | If DOL approves the certification request, then the employer may file a petition for

24 | alien worker, requesting that USCIS approve the alien in the EB-3 category, and then the

25 | alien may file an application for adjustment of status with USCIS once the alien's priority

26 | date becomes current.  *See* 8 U.S.C. § 1255(a).  USCIS adjudicates applications for

27 | adjustment of status within its statutory discretion.  *See*  8 U.S.C. § 1255(a).  USCIS

1 || promulgated 8 C.F.R. § 245.2(a)(5)(ii) to explain that USCIS may not approve an

2 || application for adjustment of status until the State Department allocates a visa number for

3 || that alien.  The request for a visa number is triggered by USCIS's determination that the

4 || applicant is eligible for adjustment of status, after which point USCIS enters the alien's

5 || information in the State Department's Immigrant Visa Allocation Management System

6 || ("IVAMS").

7 ||        Federal law vests authority for controlling the availability of visa numbers in the

8 || State Department.  *See* 22 C.F.R. § 42.51; 8 U.S.C. § 1153(g).  The State Department's

9 || Visa Office makes monthly allocations of visa numbers in compliance with the applicable

10 || statutory formulas, taking into account the monthly and quarterly limits, the numerical

11 || allocation for each preference category, country-specific limitations, and annual limits.

12 || *See, e.g.*, 8 U.S.C. § 1151 (worldwide limit); 8 U.S.C. § 1152 (country-specific limits).

13 || State Department documents explain the allocation process:

14

15

16

17

       At the beginning of each month, the Visa Office (VO) receives a
report for each consular post listing totals of documentarily qualified
immigrant visa applicants in categories subject to numerical limitation.
Cases are grouped by foreign state chargeability/preference/priority date.
No names are reported. . . . During the first week each month, this
documentarily qualified demand is tabulated.

18

19

20

21

22

23

24

       VO subdivides the annual preference and foreign state limitations
specified by the INA into monthly allotments.  The totals of documentarily
qualified applicants which have been reported to VO, are compared each
month with the numbers available for the next regular allotment.  The
determination of how many numbers are available requires consideration of
several of variables, including: past number use; estimates of future number
use and return rates; and estimates of additional [USCIS] demand based on
cut-off date movements.  Once this is done, the cut-off dates are established
and numbers are allocated to reported applicants in order of their priority
dates, the oldest dates first.

25

26

       If there are sufficient numbers in a particular category to satisfy all
reported documentarily qualified demand, the category is considered
"Current".  For example: If the monthly allocation target is 3,000 and we
only have demand for 1,000 applicants the category can be "Current".

27

ORDER- 4

1           Whenever the total of documentarily qualified applicants in a
2    category exceeds the supply of numbers available for allotment for the
     particular month, the category is considered to be "oversubscribed" and a
3    visa availability cut-off date is established.  The cut-off date is the priority
     date of the first documentarily qualified applicant who could not be
4    accommodated for a visa number.  For example: If the monthly target is
     3,000 and we have demand for 8,000 applicants, then we would need to
5    establish a cut-off date so that only 3,000 numbers would be allocated.  In
     this case, the cut-off would be the priority date of the 3,001st applicant.
6           Only persons with a priority date earlier than a cut-off date are
7    entitled to allotment of a visa number. . . .
            Not all numbers allocated are actually used for visa issuance; some
8    are returned to VO and are reincorporated into the pool of numbers
     available <u>for later allocation during the fiscal year</u>. . . .
9           When visa demand by documentarily qualified applicants from a
10   particular country exceeds the amount of numbers available under the
     annual numerical limitation, that country is considered to be
11   oversubscribed. Oversubscription may require the establishment of a cut-
12   off date which is earlier than that which applies to a particular visa category
     on a worldwide basis.  The prorating of numbers for an oversubscribed
13   country follows the same percentages specified for the division of the
14   worldwide annual limitation among the preferences. . . .

15   State Department Administrative Record (Dkt. # 21) at 4-6 (emphasis added).

16       In this lawsuit, Plaintiffs seek review of the State Department's visa cut-off dates

17   in fiscal years 2008 and 2009 (because they contend that dates were based on arbitrary

18   and capricious estimates), and they further allege that the State Department misallocated

19   visa numbers because they failed to maintain waiting lists as required by 8 U.S.C. §

20   1153(e)(3).  Though Plaintiffs also name USCIS as a Defendant with regard to those

21   allocations, they have not cited any statutory authority requiring USCIS to participate in

22   the establishment of cut-off dates or the maintenance of waiting lists.[2]  Thus, Plaintiffs

23   _____

24       [2] The Plaintiffs cite only 8 U.S.C. § 1153(e) as the source of the duty imposed on USCIS,
25   but that statute does not mention USCIS, let alone impose any duty on USCIS.  The statute
     references only the Secretary of State.  Though at oral argument Plaintiffs' counsel instructed the
26   court to look at the overall structure of the immigrant visa program in order to determine
     USCIS's duties, an APA claim must be based upon a plaintiff's identification of a "particular
27   'agency action' that causes it harm."  *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 891 (1990).

1   have failed to state an APA claim against USCIS, and the remainder of the court's order

2   will address the allegations regarding the State Department.

3        Defendants argue that Plaintiffs lack standing to pursue claims against the State

4   Department because (1) to the extent that visa numbers were allocated improperly in

5   fiscal years 2008 and 2009, those numbers cannot be recaptured and then reallocated at

6   this time, and (2) to the extent that the Plaintiffs request prospective relief, this court

7   cannot order an agency to ignore the Congressionally imposed limitations on visa-

8   number allocation.

9   **1.     Plaintiffs Have Not Provided Any Authority for a Court-Ordered Allocation of Visa Numbers From a Previous Fiscal Year During This Fiscal Year.**

10

11        Plaintiffs request that this court find that the State Department misallocated visa

12   numbers in fiscal years 2008 and 2009, and that the court order that the State Department

13   recapture the misallocated and unused visa numbers and allocate them during this fiscal

14   year.  Prayer for Relief ¶¶ 7-8.  The Plaintiffs have not, however, provided any authority

15   showing that the State Department can recapture visa numbers from a previous year and

16   allocate them in a current year.  It is true that in specific circumstances, Congress has

17   provided for the recapture and reallocation of visa numbers (*see* Oppenheim Decl. (Dkt. #

18   36-1)), but in general, the State Department's visa-number allocation system is based on

19   per-fiscal-year calculations and does not contemplate that unused visa numbers will

20   rollover to the next fiscal year.  *See* USCIS Ombudsman Annual Report (Dkt. # 15-2) at

21   33 ("[W]hen employment-based visas are not used during the year they are authorized,

22   they are lost and are not available for future use without special legislation.")  *See also*

23   151 Cong. Rec. S3887 (daily ed. Apr. 19, 2005) (statement of Rep. Hutchinson)

24   ("[Unused visa numbers] go out of existence and cannot be recaptured except by an act of

25   Congress.").  Thus, according to Defendants, Plaintiffs' claims relating to the 2008 and

26   2009 visa numbers are moot because this court cannot order that those numbers be

27   recaptured.

1        To rebut that argument, Plaintiffs rely on *Silva v. Bell*, 605 F.2d 978 (7th Cir.

2   1979), wherein the court ordered that the government recapture and reissue wrongfully

3   issued visa numbers.  But that case is factually distinguishable from this case, because in

4   *Silva* the governmental defendants conceded that visa numbers had been misallocated and

5   had been in the process of altering its allocation policies when Congress amended the

6   INA to impose a limitation on the total number of immigrant visas available during a

7   fiscal year to natives of any one state in the Western Hemisphere.  *See Silva*, 675 F.2d at

8   981.  The governmental defendants thereafter designed and subsequently restructured a

9   program to recapture and reissue misallocated visa numbers, and the plaintiffs challenged

10  the methods by which the defendants allocated those visa numbers.  *See Silva*, 675 F.2d

11  at 983.  Thus, the question before the *Silva* court was not whether recapture and

12  reallocation was possible, but how it should be conducted; here, the Defendants' have not

13  conceded any error and have not undertaken efforts to recapture and reallocate any visa

14  numbers issued in prior fiscal years.  As a result, *Silva* is not particularly analogous to

15  this case.

16       Thus, Plaintiffs have failed to identify any authority that would show that the State

17  Department can effectuate the relief requested, namely recapturing visa numbers from

18  previous fiscal years.  As a result, the court finds that the claims related to visa numbers

19  from previous fiscal years are moot.  *See Iddir v. I.N.S.*, 166 F. Supp. 2d 1250, 1258-59

20  (N.D. Ill. 2001) (finding a case to be moot because the plaintiffs had fail to show that the

21  governmental defendants had the power to issue visas to the plaintiffs via a particular

22  eligibility program beyond the fiscal year in which they were found eligible).   The court

23  does not have subject matter jurisdiction over moot claims, and thus those claims must be

24  dismissed.  *See Powell v. McCormack*, 395 U.S. 486, 496-97 (1969) (dismissing a case as

25  moot because "the issues presented are no longer 'live' or the parties lack a legally

26  cognizable interest in the outcome").

27

ORDER- 7

## 2.    The Complaint Does Not State a Non-Moot Claim for Prospective Relief.

The Plaintiffs' claims are primarily based on allegations that the State Department allocated visa numbers out of priority order during fiscal years 2008 and 2009.  *See* ¶¶ 3, 36-40, 44.  Plaintiffs request that, in the event the court does not order that visa numbers from those years be recaptured and allocation, the court order that visa numbers from fiscal year 2010 be allocated to Plaintiffs.  Defendants have, however, submitted evidence that the EB-3 visa numbers reached their annual limits in fiscal year 2010 (see Notice (Dkt. # 32), Ex. 1), which suggests that there may be no unused visa numbers from 2010 to recapture.

But regardless of whether there are currently any unused visa numbers that could be recaptured and reallocated during this fiscal year, the Plaintiffs' allegations nonetheless focus on alleged violations that occurred during fiscal year 2008 and 2009.  While it is understandable that the complaint is limited to those years, because those were the years immediately following the Plaintiffs' applications for adjustment of status, the court cannot provide any relief for alleged violations in years past, because those claims are now moot (as explained in the previous section).  Prospective relief is not possible because the court will not disturb the State Department's process by which it allocates visa numbers, particularly given that the Plaintiffs have clarified that they do not challenge that process.  *See* Pltfs.' Opp'n (Dkt. # 30) at 4:3-4.  Because the Plaintiffs' claim for prospective relief is grounded only on past alleged violations (see Pltfs.' Opp'n at 4:5-7), which cannot be undone, the Plaintiffs have not presented a live controversy to the court and thus the court lacks subject matter jurisdiction.

ORDER- 8

1

2                          IV.    CONCLUSION

3          For the reasons stated above, the court GRANTS the Defendants' motion (Dkt. #

4    23).

5          Dated this 15th day of March, 2011.

6

7                                          _____

8
                                           The Honorable Richard A. Jones
9                                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER- 9